UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA LINK,

       Plaintiff,                       Case No. 17-cv-10844

v.                                            Paul D. Borman
                                            United States District Judge
RECOVERY SOLUTIONS
GROUP, L.L.C.,

       Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT (ECF NO. 15)

Plaintiff in this action claims that Defendant Recovery Solutions Group, LLC, attempted to collect a debt from her through threatening and intimidating phone calls in violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("the FDCPA") and the Michigan Occupational Code, Mich Comp. Laws § 339.901 *et seq.* ("the MOC"). Defendant has failed to appear and defend this action, resulting in the Clerk of the Court entering a default on September 29, 2017. Plaintiff now moves for a default judgment under Fed. R. Civ. P. 55(b). Defendant has not responded to the motion for default judgment. The Court held a hearing on February 27, 2018, which was attended only by counsel for the Plaintiff. For the reasons that follow, the Court GRANTS the motion for default judgment and awards Plaintiff the full amount of her

1

requested damages of $27,057.00.

I. **FACTUAL BACKGROUND**

Plaintiff sought and obtained a Clerk's entry of default against Defendant on September 29, 2017. (ECF No. 14, Clerk's Entry of Default.) Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). *See also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006). The Court may either enter a default judgment in a certain amount, or conduct a hearing to determine the appropriate amount of damages. "Fed. R. Civ. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect." *Cross*, 441 F. Supp. 2d at 848.

Here, the Court deems the allegations of Plaintiff's Complaint admitted and additionally considers the Affidavits filed by Plaintiff in support of the motion for default judgment. Plaintiff is a "consumer" as that term is defined under the FDCPA. (ECF No. 1, Compl. ¶ 4.) Defendant is a "debt collector" as that term is defined under the FDCPA and a "collection agency" as that term is defined under the MOC. (Compl. ¶ 5.) Plaintiff incurred a financial obligation that was primarily for personal,

family, or household purposes based upon an alleged debt to Serv-Pro that went into default and is therefore a "debt" as that term is defined under the FDCPA. (Compl. ¶ 6; Pl.'s Mot. Ex. 1.)

Plaintiff and her live-in boyfriend, Robert Norton, have two phones, one of which is linked to Mr. Norton's cell phone and one of which is linked to their house phone. When an important call comes in, Plaintiff and Mr. Norton have worked out a system where Mr. Norton, who drives trucks for a living, can hear the call as well. To accomplish this, Plaintiff turns on the speaker phone on the house phone land line and the speaker phone on the cell phone, enabling Mr. Norton to hear the call. (Pl.'s Mot. Ex. 2, Aug. 3, 2017 Affidavit of Robert Norton ¶¶ 3, 6-8; Pl.' Mot. Ex. 3, Aug. 18, 2017 Affidavit of Teresa Link ¶¶ 3-8.) In October 2016, while on the road driving his truck, Mr. Norton received a call from an agent of the Defendant alleging that he was a "private investigator" trying to track down the Plaintiff because she had received an inheritance. (Compl. ¶ 7; Norton Aff. ¶ 9.) Mr. Norton pulled over and called Plaintiff to give her the number that the "investigator" had given him, asking that Plaintiff call him. Plaintiff called the number while Mr. Norton listened in, and the "investigator" told Plaintiff that he was hired by a collection agency and that he would be driving by her property to see what property Plaintiff had to sell. (Compl. ¶¶ 8-9.) The investigator stated that there was a woman who needed to get in touch

3

with Plaintiff and gave Plaintiff the woman's number.

Plaintiff called the woman but she did not answer the phone. (Compl. ¶ 11; Norton Aff. ¶¶ 11-13; Link Aff. ¶¶ 9-12.) The woman, a representative of the Defendant, called Plaintiff back and Mr. Norton heard the conversation. The woman told Plaintiff that she was a lawyer and that Plaintiff had 24 hours to pay a debt related to an insurance claim on a fire at Plaintiff's former residence. (Compl. ¶¶ 13; Norton Aff. ¶¶14-16; Link Aff. ¶¶ 13-16.) The woman represented that she was going to have people come to Plaintiff's home to seize property. Plaintiff did not know she owed the debt to Serv-Pro and asked if she could have time to investigate the alleged debt. The woman insisted that Plaintiff had 24 hours to pay the debt and stated that she would contact the State insurance commissioner and that Plaintiff would go to prison for insurance fraud if she did not pay in that time frame. (Compl. ¶¶ 13-16; Norton Aff. ¶¶ 17-24; Link Aff. ¶¶ 16-25.)

Plaintiff became hysterical crying as a result of the call, her arms became numb and her head hurt. She thought she would be going to jail because she had no idea how she would come up with the money in 24 hours. (Compl. ¶ 19; Norton Aff. ¶¶ 21-27; Link Aff. ¶¶ 28-29.) She asked Mr. Norton what she should do and he called a friend, Carolyn Norton (no relation) and asked her to call Plaintiff to try to calm her down. (Compl. ¶ 20; Norton Aff. ¶¶ 28-29; Link Aff. ¶ 30.) Ms. Norton did call

Plaintiff and they spoke for one and a half to two hours. Plaintiff reiterated to Ms. Norton the events that had transpired and Plaintiff was worried, scared and crying during the call. (Pl.'s Mot. Ex. 4, Aug. 18, 2017 Affidavit of Carolyn Norton 1-16.) Plaintiff eventually did calm down after speaking with Ms. Norton but the collector continued to call her, again and again. (C. Norton Aff. ¶¶ 18; Link Aff. 32.) Every time the phone rang, Plaintiff feared it was the collector calling again and she would mumble to herself, "it's them again, I'm not answering." (Norton Aff. ¶¶ 30-31; Link Aff. ¶¶ 32-33.) Ms. Norton suggested that Plaintiff contact a lawyer, which Plaintiff did. (Link Aff. ¶ 34-35; C. Norton Aff. ¶¶ 17-18.)

Plaintiff requests a default judgment in the amount of $27,057.00, representing: (1) statutory damages under the FDCPA of $1,000.00; (2) actual damages under the FDCPA of $5,000.00; (3) three times actual damages under the MOC of $15,000.00; (4) costs for service of process of $267.00; and (5) attorneys' fees of $5,790.00.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b) a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner v. City of Dearborn Heights*, No. 07–15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once

a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations are deemed admitted. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d at 846 (citation omitted).

Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. Fed. R. Civ. P. 55(b). When the plaintiff's complaint alleges damages for a sum certain a default judgment by the clerk is appropriate. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice & Procedure, § 2685 (3d ed. 1998) (collecting cases). After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded. *See id*. § 2688 (collecting cases).

Where damages are for an uncertain amount, a party must apply to the Court for a default judgment. Entry of default judgment by the Court is governed by Federal Rule of Civil Procedure 55(b)(2). The rule states that, in entering a default judgment:

> [t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## III. ANALYSIS

### A. Jurisdiction and Service of Process are Proper

This Court has subject matter jurisdiction over this action, which presents a federal question under the FDCPA, under 15 U.S.C. § 1331. Further, the Court has personal jurisdiction over the parties, Plaintiff having filed her action here and Defendant, according to the admitted allegations of the Complaint and Affidavits filed in support of Plaintiff's motion, having caused Plaintiff to suffer emotional harm in this district by communicating false, deceptive and misleading information to Plaintiff concerning an alleged debt to Serv-Pro. *See Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 380 (6th Cir. 1968) (establishing a three-part test for satisfying the requirements of due process in the exercise of personal jurisdiction, each of which is satisfied here); *Vlach v. Yaple*, 670 F. Supp. 2d 644, 648-49 (S.D. Ohio 2009) (finding *Southern Machine* three-part test satisfied by a letter and two emails attempting to collect a debt in violation of provisions of the FDCPA). The exercise of personal jurisdiction over the Defendant comports with due process.

Service of process is also proper here. "Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Russell v. Tribley*, No. 10–14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases). *See also O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353–55 (6th Cir. 2004) ("Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties.... Therefore, if service of process was not proper, the court must set aside an entry of default.") (citations omitted).

In this case, Plaintiff made several unsuccessful attempts to serve the Defendant, ultimately applying to this Court for permission to attempt service through alternate means. (ECF No. 5, Ex Parte Motion for Alternate Service.) On June 29, 2017, this Court did grant Plaintiff's motion for alternate service, instructing that alternate service could be effected by:

- Tacking or affixing, by a process server, of the summons, complaint, and this order at 16819 S. Dupont Hwy. Ste, 300, Harrington, Delaware 19952;

- Mailing the same documents via certified mail return receipt to 16819 S. Dupont Hwy. Ste 300, Harrington, Delaware 19952; and

- Mailing the same documents via first-cla[ss] mail return receipt to

>16819 S. Dupont Hwy., Ste 300, Harrington, Delaware 19952 and
>
>to 164 Mayor Lane, Felton, Delaware 19943 to the attention of
>
>Robert Sowers.

(ECF No. 7, Order Granting Plaintiff's Ex-Parte Motion for Alternate Service 2-3, PgID51-52.) Plaintiff has provided proofs of service confirming that Plaintiff has complied with the Court's instructions for alternate service. (ECF Nos. 8, 9.) Plaintiff has also provided proof of service of its Motion for Default Judgment and Notice of Hearing on the Motion for Default Judgment via first class mail on Defendant at the addresses approved by the Court in its Order granting the motion for alternate service of the Complaint. (ECF Nos. 13, 17.) Accordingly, the Court finds that service was proper.

### B. Plaintiff's Claims Under the FDCPA

Plaintiff has, by its default, admitted all of the allegations of Plaintiff's Complaint and has also failed to contest the factual statements made in the affidavits of Mr. Norton, Ms. Link, and Ms. Norton. Plaintiff avers that the female representative of the Defendant made several threats to the Plaintiff that were false, deceptive, and misleading and thus illegal under several provisions of the FDCPA. Defendant's representations or threats that (1) the investigator would be driving by Plaintiff's house looking to seize personal property, and (2) that non-payment of the

9

debt would result in imprisonment and prosecution for insurance fraud, were false. Defendant had no intention of, and did not, drive by Plaintiff's residence in search of property to seize in satisfaction of the debt. The threats that the insurance commissioner would have Plaintiff arrested for insurance fraud if she did not pay the debt within 24 hours and that her personal property would be seized were (1) never intended to be and never were acted upon, and (2) were false and misleading because there was no evidence of a claim made by Serv Pro that Plaintiff had committed fraud. Specifically, Plaintiff alleges that Defendant's conduct violated the following provisions of Section 1692e of the FDCPA:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> (7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1962e(3), (4), (5), (7), (10).

The Court finds that Plaintiff has demonstrated a valid claim under the FDCPA based on Defendant's baseless threats and intimidation tactics. *See Rohn v. Commercial Recovery Systems, Inc.*, No. 13-cv-10780, 2013 WL 6195578, at *5-6 (E.D. Mich. Nov. 26, 2013) (finding liability on a motion for default judgment where plaintiff alleged that defendant's representative engaged in a telephone conversation in an attempt to collect a debt and (1) threatened legal action against the plaintiff with no intention or authority to take such action and (2) never took such action).

Under section 1692k of the FDCPA, a debt collector who violates any provision of the statute is entitled to recover: "(1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;" and "(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(1), (2)(A), and (3).

The Court concludes that Plaintiff is entitled to statutory damages of $1,000 under § 1692k(a)(2)(A) because of the repeated calls that the Defendant's

representative placed to Plaintiff seeking to collect on the debt. It is irrelevant that Plaintiff did not answer all of the calls when she knew who was calling.

Further, the Court finds that Plaintiff has established sufficient facts to support her claim for actual damages for emotional distress in the amount of $5,000.00. Plaintiff was threatened with immediate seizure of her personal property by someone claiming to be in the vicinity of her home and was threatened with the specter of being prosecuted for fraud by the state commissioner of insurance and going to jail if she did not come up with the money to pay the debt within 24 hours. This would be enough to make any individual extremely frightened, distraught, and humiliated. *See Lodge v. Cred X Debt Recovery, LLC*, No. 13-cv-11785, 2013 WL 5934628, at *2 (E.D. Mich. Nov. 5, 2013) (finding actual damages in the amount of $3,000.00 for plaintiff's "mental anguish and embarrassment" appropriate) (citing *Harding v. Check Processing, LLC*, No. 10-cv-2359, 2011 WL 1097642, at * 2-3 (N.D. Ohio March 22, 2011) ("holding that where the record is limited as to support for non-economic damages, $5,000 sufficiently compensates a plaintiff for emotional distress suffered as a result of improper debt collection under the FDCPA")). This Court noted in *Hett v. Bryant Lafayette and Assoc., LLC*, No. 10-cv-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011), that where the plaintiff fails to submit "any medical records, telephone records, witness affidavits of other evidence to substantiate claims

[mental distress] damages," the court must be circumspect in awarding such damages. In *Hett*, where there was no such substantiating evidence, this Court awarded mental distress damages but limited them to $2,000.00. Here, however, Plaintiff has introduced her own Affidavit testimony and the Affidavit testimony of two individuals who testify to Plaintiff's extremely (and uncharacteristically) distraught condition following the threats made by Defendant's representative.

The Court also concludes that Plaintiff is entitled to recover costs of $267.00 related to service of the Complaint and attorneys' fees of $5,790.00. Plaintiff's counsel claims to have spent 19.7 hours on this case at the rate of $300 per hour. Plaintiff's counsel has been licensed to practice law since 2005 and focused on consumer law since 2008. According to the State Bar of Michigan 2014 Economics of Law Practice tables, $300 per hour is a very average hourly rate for an attorney in Michigan practicing consumer law. (Pl.'s Mot. Ex. 8, 2014 Economics of Law Practice, 2013 Attorney Hourly Billing Rates by Field of Practice p. 6, PgID 180.) Plaintiff's counsel kept contemporaneous time records, which he attaches to the motion for default judgment. These time records demonstrate reasonable amounts of time efficiently spent on the listed tasks: (1) approximately 3-1/2 hours meeting with his client, drafting the Complaint and arranging for initial attempts at service in the State of Delaware; (2) approximately 5-1/2 hours researching and drafting the motion

for alternate service, reviewing and taking steps to comply with the Court's Order granting the motion for alternate service; (3) and approximately 10-1/2 hours obtaining clerk's entry of default, meeting with clients to prepare affidavits submitted in support of motion for default judgment and preparing the motion for default judgment. These are reasonable charges for reasonable amounts of time spent on necessary matters. The Court awards Plaintiff the full amount of attorneys' fees requested. Thus, the Court awards Plaintiff the full amount of damages claimed under the FDCPA: $12,057.00.

### C. Plaintiff's Claim Under the MOC

Plaintiff claims in her Complaint that Defendant violated the MOC, which mirrors many of the provisions of the FDCPA listed above. Plaintiff alleges that Defendant conveyed information regarding a debt in violation of the MOC, and specifically Mich. Comp. Laws § 339.915(e), which prohibits a debt collector from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." Here, according to the allegations of Plaintiff's Complaint which are deemed admitted by default, the Defendant's agent represented that she was an attorney when she was not and represented that she would contact the insurance commissioner to have plaintiff

arrested and criminally charged with fraud, when she could not and did not do so. Plaintiff further alleges, which is deemed admitted, that these violations were wilful. (Compl. ¶¶ 37-42.)

> The MOC provides for a private action for damages as follows:
>
> (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this article or rules promulgated under this article, may bring an action for damages or other equitable relief.
>
> (2) If the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a wilful violation, it may award a civil penalty of not less than 3 times the actual damages, or $150.00, whichever is greater and shall award reasonable attorney's fees and court costs incurred in connection with the action.

Mich. Comp. Laws § 339.916. Damages for emotional distress and mental anguish are generally recoverable as an element of actual damages under Michigan law. *Christie v. Fick*, No. 285924, 2010 WL 716097, at *3 (Mich. Ct. App. March 2, 2010) ("damages for mental distress are allowable as part of a plaintiff's actual damages").

Regarding Plaintiff's treble damage claim under the MOC, United States Magistrate Judge Grand of this district did award such damages in a case asserting claims under both the FDCPA and the MOC. In *Croft v. ALD, LLC*, No. 15-cv-10077, 2017 WL 762255 (E.D. Mich. Jan. 23, 2017), Magistrate Judge Grand, on a motion for default judgment on plaintiff's claims under the FDCPA and MOC, awarded

$1,000.00 in statutory damages under the FDCPA, $10,000.00 in actual damages under the FDCPA for emotional harm, and treble actual damages under the MOC of $30,000.00. The court in *Croft* did reduce plaintiff's actual damages from a claimed $25,000.00 to $10,000, finding that the lesser amount adequately compensated the plaintiff for any emotional harm suffered as a result of the defaulted party's conduct. *Id*. at *3. The court found this reduction particularly appropriate in light of the award of treble damages under the MOC. *Id*.

The Court finds, on the particularly egregious threatening conduct of the Defendant's representative here, that an award of $5,000.00, trebled under the MOC to an award of $15,000.00, is appropriate to compensate Plaintiff for the emotional harm she suffered and to deter future occurrences of this type of obnoxious and threatening behavior.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment and awards damages in the amount of $27,057.00.

IT IS SO ORDERED.

s/Paul D. Borman<br>
PAUL D. BORMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: April 27, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 27, 2018.

                                        s/Deborah Tofil
                                        Case Manager